IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Douglas E. Phillips, ) | |
| ) | |
| Plaintiff, ) | Case No. 8:13-cv-01959-JMC-JDA |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Dr. Jack M. Valpey, Cherly Werre, Michael ) | |
| A. Miles, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the Court on a motion for summary judgment filed by Defendants. [Doc. 28.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

Plaintiff, proceeding pro se, filed this action on July 15, 2013, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983.[1] [Doc. 1.] Defendants filed a motion for summary judgment on October 28, 2013. [Doc. 28.] By Order filed on October 29, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal/summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. [Doc. 29.] Plaintiff filed a response in opposition on January 6, 2014 [Doc. 34] and submitted additional attachments on March 3, 2014 [Doc. 38]. The motion is ripe for review.

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Accordingly, this action was filed on July 15, 2013. [Doc. 1-2 at 1(envelope stamped as received by the prison mail room on July 15, 2013).]

## BACKGROUND[2]

At all times relevant to the factual allegations underlying this action, Plaintiff was in the custody of the South Carolina Department of Corrections ("SCDC") and housed at Manning Correctional Institution ("Manning").[3] [Doc. 1 at 2.] Plaintiff alleges he fell and injured his knee and back while coming out of the bathroom on November 20, 2012 during work time in the SCDC cafeteria on his assigned job. [*Id.* at 3.] According to Plaintiff, the floor was wet with no wet floor sign and there were missing tiles, including where Plaintiff fell. [*Id.*] Plaintiff contends the cafeteria supervisor witnessed the incident, completed an incident report, and called medical, but medical was closed at the time. [*Id.*] Defendant Nurse Michael A. Miles ("Miles") informed the cafeteria supervisor that medical would be open later, and the cafeteria supervisor told Plaintiff to wait in the cafeteria until medical opened. [*Id.*]

Plaintiff alleges he waited in great pain and when he was finally taken to medical that day, he was seen by Miles, but Miles did not treat the injury; instead, Miles just looked at the injury and said it was fine. [*Id.*] On December 17, 2012, Plaintiff was seen by Defendant Cherly Werre ("Werre"), who glimpsed at Plaintiff's leg, told him there was nothing wrong with him, and told him to sign up for sick call. [*Id.*] On December 19, 2012, Plaintiff was seen by Defendant Dr. Jack M. Valpey ("Dr. Valpey"). [*Id.*] Plaintiff contends Dr. Valpey failed to treat or properly examine Plaintiff. [*Id.*]

---

[2]The facts included in this Background section are taken directly from Plaintiff's Complaint.

[3]Plaintiff was released from custody during the pendency of this action. [*See* Doc. 11 (notice of change of address, indicating Plaintiff was released on August 1, 2013).]

2

Plaintiff alleges that he has been signing up for sick call off and on and, as of the date he filed the Complaint, he had not received any treatment for his injury. [*Id.*] Construing the Complaint liberally, Plaintiff alleges claims for medical malpractice, negligence, and deliberate indifference to medical needs. He seeks payment for any medical bills and expenses incurred after his release and compensatory damages. [*Id.* at 4.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by

> governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

5

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact and (2) he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue.  *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion.  *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude

the granting of the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

**Claims for Injunctive and/or Declaratory Relief are Moot**

As an initial matter, because Plaintiff is no longer incarcerated at Manning [*see* Doc. 11 (notice of change of address)], his claims are moot to the extent he is seeking injunctive and/or declaratory relief. *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (holding that former detainee's request for injunctive relief was moot). Plaintiff's claims for monetary damages, however, survive his transfer from Perry, *id.*, and, as public officials, Defendants are subject to suit for damages in their individual capacities[4] in a §

---

[4] To the extent Plaintiff brings this suit against Defendants in their official capacities, Defendants are entitled to immunity pursuant to the Eleventh Amendment from Plaintiff's claims for monetary damages. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama*

7

1983 lawsuit, *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991).  Nevertheless, for the reasons set forth below as to Plaintiff's damages claims, the evidence is insufficient to create a genuine issue of fact as to whether Defendants violated Plaintiff's constitutional rights.

**Exhaustion of Administrative Remedies**

Defendants contend the case should be dismissed for failure to exhaust administrative remedies.  [Doc. 28-1 at 7–9.]  The Court disagrees.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  As the United States Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an

---

*v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983.  *Id.*  As a result, to the extent Plaintiff has alleged claims for monetary damages against Defendants in their official capacities, those claims must be dismissed because Defendants in their official capacities are entitled to immunity pursuant to the Eleventh Amendment.

> administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; an inmate must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process). *But see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad"). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes all steps of a prison's grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g.*, *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006).

9

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones*, 549 U.S. at 211–12; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust. *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

SCDC has an Inmate Grievance System. [Doc. 28-6.] Under SCDC Grievance Policy GA–01.12, in most cases, inmates must make an effort to informally resolve a grievance by submitting a Request to Staff Member Form to the appropriate supervisor/staff. [*Id.* § 13.2.] If informal resolution is not possible, the inmate is to complete Form 10–5, Step 1, within 5 days of the alleged incident. [*Id.*] The Warden will respond to the grievant in writing. [*Id.* § 13.5.] If the inmate is not satisfied with the decision, the inmate may appeal to the Division Director of Operations for final resolution of the grievance. [*Id.* § 13.6.] To initiate the appeal, the inmate must complete SCDC Form 10–5a, Step 2, and submit this form to the Inmate Grievance Coordinator within five calendar days of receipt of the response to the Step 1 grievance. [*Id.* § 13.7.] The Inmate

Grievance Coordinator forwards the Step 2, the Step 1, and copies of necessary documentation to the Inmate Grievance Branch within five days; and the responsible official will render the final decision on the grievance within 90 days from the date the Inmate Grievance Coordinator received the appeal of the Warden's decision. [*Id.*] As part of the final decision, the grievant is notified that any further appeal must be initiated within 30 days with the South Carolina Administrative Law Court. [*Id.* § 13.9.]

Defendants concede that Plaintiff "complete[d] the first two steps of the grievance procedure by appealing the Warden's response to his grievance to the Inmate Grievance Administrator," but Defendants argue Plaintiff has not exhausted his administrative remedies because he failed to appeal to the Administrative Law Court. [Doc. 28-1 at 9.] However, as previously stated, courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes all steps of a prison's grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g.*, *Ayre,* 2007 WL 3232177, at *7 n.5; *Charles,* 2006 WL 1341267, at *4. Accordingly, the case is not subject to dismissal for failure to exhaust administrative remedies.

**Deliberate Indifference to Medical Needs Claims**

Plaintiff alleges Defendants were deliberately indifferent to his serious medical needs by failing to treat an injury he sustained when he slipped and fell. [Doc. 1.] Defendants argue they were not deliberately indifferent to Plaintiff's medical needs. [Doc. 28-1 at 9–15.] The Court agrees Defendants are entitled to summary judgment.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment and states a cause of action under § 1983 because deliberate indifference constitutes "the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104–05 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." (citation omitted)). Within the United States Court of Appeals for the Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights. *Miltier*, 896 F.2d at 851.

To prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his medical condition was a sufficiently serious one[5] and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind, which is satisfied by showing deliberate indifference by the prison officials. *Goodman v. Wexford Health Sources, Inc.*, No. 09-6996, 2011 WL 1594915, at *1 (4th Cir. Apr. 28, 2011) (quoting *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998)). As the United States Supreme Court has explained,

---

[5]"A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990) (citing *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987); *Hendrix v. Faulkner*, 525 F. Supp. 435, 454 (N.D. Ind.1981)).

> Since, we said, only the "'unnecessary *and wanton* infliction of pain'" implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege "deliberate indifference" to his "serious" medical needs. "It is *only* such indifference" that can violate the Eighth Amendment; allegations of "inadvertent failure to provide adequate medical care," or of a "negligent . . . diagnos[is]," simply fail to establish the requisite culpable state of mind.

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (emphasis and alteration in original) (citations omitted). Further, in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613 (4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also, e.g.*, *Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011) (citing *Jackson*, 846 F.2d at 817). The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g.*, *Russell*, 528 F.2d at 319.

Assuming without deciding that Plaintiff can establish his medical needs were sufficiently serious, he has failed to establish a genuine issue of material fact remains as to whether Defendants acted with a sufficiently culpable state of mind. The medical records reveal that Plaintiff was seen by Miles on the day Plaintiff fell. [Doc. 28-2 at 5.] Plaintiff complained of pain to his right knee. [*Id.*] Plaintiff had no swelling and full range of motion in his right knee. [*Id.*] Miles gave Plaintiff Ibuprofen, an ice pack, and a no-work-pass and was instructed to remain on bed rest for three days, to apply the ice pack for two

13

days and then to apply a warm compress, and to return to the clinic two days later on November 23, 2012. [*Id.*] However, the next encounter listed in the medical records was on November 26, 2012, when cafeteria staff called to inform medical that Plaintiff continued to have knee pain; Miles told the cafeteria staff to allow one no work day and to tell Plaintiff to sign up on sick call. [*Id.*]

Plaintiff was a no show for sick call on November 27, 2012 because he was held up by inmate count, but was later seen by Miles, who observed that Plaintiff was able to walk out of the area in a brisk pace with a slight limp and was not in acute distress. [*Id.* at 4–5.] Plaintiff was seen by a nurse on December 7, 2012, and Dr. Valpey ordered an x-ray of Plaintiff's right knee. [*Id.* at 4.] An x-ray was taken of Plaintiff's right knee on December 10, 2012. [*Id.*] Plaintiff saw Miles again on December 13, 2012, with complaints of pain. [*Id.*] Miles noted that Plaintiff could ambulate without difficulty and had no limping, facial grimacing, moaning, or guarding present while standing or ambulating; he also had full range of motion with no signs of pain observed or voiced. [*Id.*] Miles scheduled an appointment for Plaintiff to see Dr. Valpey. [*Id.*]

Plaintiff saw Dr. Valpey on December 19, 2012.[6] [*Id.*] Plaintiff complained of right knee pain, but his x-ray results were normal. [*Id.*; Doc. 34-1 at 1.] Dr. Valpey observed that both knees were the same in all facets and no structure damage was found or suspected. [*Id.*] Plaintiff refused nonsteroidal anti-inflammatories but requested time off from work; accordingly, Dr. Valpey gave Plaintiff a two day no-work-pass. [*Id.*]

---

[6]Plaintiff was scheduled to see Dr. Valpey on December 17, 2012; however, the x-ray report was not available at that time. [Doc. 28-2 at 4.]

Plaintiff was not seen for complaints of knee or back pain again until July 15, 2013. [*Id.* at 1.] Werre observed no abnormality, and Plaintiff was given Ibuprofen. [*Id.*] Plaintiff was seen again on July 19, 2013, complaining that the Tylenol was not doing anything; Miles noted that Plaintiff could ambulate without difficulty with good back posture and had no facial grimacing or guarding. [*Id.*] Miles told Plaintiff to give the medicine time to become effective and to return in two days if he still did not have any relief. [*Id.*] Plaintiff was seen again on July 25, 2013, and Miles noted Plaintiff ambulated without any signs of distress and had good range of motion; Miles scheduled an appointment for Plaintiff to see Dr. Valpey. [*Id.*] Dr. Valpey saw Plaintiff on July 26, 2013, and prescribed Naprosyn. [*Id.*] As previously stated, Plaintiff was released on August 1, 2013. [Doc. 11.]

Although Plaintiff may disagree with the treatment he received, Defendants have adequately addressed Plaintiff's medical needs. Plaintiff was seen numerous time for his complaints of knee and back pain and was given different medications, ice packs, and no-work-passes. An x-ray was performed on Plaintiff's knee, and the results were normal. Medical staff noted no signs of swelling or abnormality with Plaintiff's knee, and he consistently had full range of motion. Plaintiff's disappointment in the treatment he received does not translate to deliberate indifference. As explained above, the Constitution requires only that a prisoner receive adequate medical care; the Constitution does not mandate that a prisoner receive the medical treatment of his choice. *See, e.g., Jackson*, 846 F.2d at 817. Plaintiff has failed to demonstrate a genuine issue of material fact

remains as to whether Defendants acted with deliberate indifference. Accordingly, Defendants' motion for summary judgment should be granted.[7]

**Qualified Immunity**

Defendants also argue they are entitled to qualified immunity. [Doc. 28-1 at 15–17.] The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[ ] and ... whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an

---

[7]To the extent Plaintiff alleges negligence or medical malpractice, negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983. *Gamble*, 429 U.S. at 106. Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. *Id.* ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Moreover, to the extent Plaintiff is attempting to set forth a state law claim for medical malpractice, Plaintiff has failed to proffer expert testimony that Defendants deviated from the standard of care. *See* S.C.Code Ann. § 15–36–100.

allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed above, Plaintiff's allegations fail to demonstrate Defendants violated Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>United States Magistrate Judge

July 17, 2014
Greenville, South Carolina